**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
IN THE MATTER OF AN APPLICATION           MEMORANDUM
OF THE UNITED STATES FOR AN ORDER      AND ORDER
(1) AUTHORIZING THE USE OF A PEN
REGISTER AND A TRAP AND TRACE            M 05-1093 (JO)
DEVICE AND (2) AUTHORIZING RELEASE
OF SUBSCRIBER INFORMATION AND/OR
CELL SITE INFORMATION.
-----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

      In furtherance of a continuing criminal investigation, the government seeks, among other things, the "disclosure of the location of cell site/sector (physical address) at call origination (for outbound calling), call termination (for incoming calls), and if reasonably available, during the progress of a call, for the Subject Telephone." Sealed Application ("Application") at 1-2. It seeks to obtain such information by means of two proposed orders, one authorizing the agents to obtain it and another ordering the relevant telecommunications entity to provide it. The latter proposed order makes clear that the carrier would provide such information by means of "a pen register (with cell site location authority)...." [Proposed] Sealed Order To Service Provider at 1. After expressing doubt about whether I am authorized to grant the such relief, I offered the government the opportunity to submit authority supporting its request. The government declined but reserved its right to do so in the future, either in seeking review of any denial of relief in the instant matter or in connection with other applications. For the reasons set forth below, I now deny the portion of the application seeking cell site location information. I have already executed the remaining portions of the proposed orders, which remain under seal, granting the government's remaining requests for relief including the installation and use of a pen register and trap and trace device, and related relief, pursuant to 18 U.S.C. §§ 2703, 3122, and 3123.

In its application, the government purports to rely on subsections (c)(1)(B), (c)(2), and (d) of 18 U.S.C. § 2703 as the source of a court's authority to issue the requested relief. Of those provisions, the only one that appears arguably to permit the disclosure of cell site location information is the language permitting the disclosure of "the contents of a wire or electronic communication" upon an offer of "specific and articulable facts showing that there are reasonable grounds to believe that [such information is] relevant and material to an ongoing criminal investigation." *Id*. § 2703(d). As I am satisfied that the government's application fulfills the latter requirement, the remaining question is whether the requested information can properly be considered "the contents of [an] electronic communication."

Pursuant to 18 U.S.C. §§ 2711(1) and 2510(12), the answer to the latter question appears to be "yes" *unless* the Subject Telephone is a "tracking device" as defined in 18 U.S.C. § 3117. *See id*. § 2510(12)(C). A "tracking device" is in turn defined as "an electronic or mechanical device which permits the tracking of movement of a person or object." *Id*. § 3117(b). Based on the government's application, it appears that the latter definition precisely describes the attribute of the Subject Telephone (or such other instrument as actually would produce the requested information) that renders the disclosure of cell site location information relevant and material to the ongoing investigation. As the Application recites,

> the general geographic location of the Subject Telephone derived from cell site information used by the Subject Telephone can be used to corroborate the observations of surveillance agents. More specifically, surveillance agents can compare observations of the user of the Subject Telephone with cell site information in order to verify the identification and location of the user of the Subject Telephone.

Application ¶ 10.

In other words, the requested information is useful in the same way that physical surveillance of the telephone user is useful: it reveals that person's location at a given time. The fact that the requested order would authorize the disclosure of cell site location information, "if reasonably available, during the progress of a call," [Proposed] Sealed Order Of Authorization at 4, further suggests that the authorization, if granted, would effectively allow the installation of a tracking device without the showing of probable cause normally required for a warrant.

The foregoing leads me to believe that I cannot grant the government the relief it seeks on the basis of the precise authority it cites, namely, 18 U.S.C. § 2703. In fairness, however, I must also consider whether the relief is available simply by virtue of the government's otherwise proper application for authorization to use a pen register and trap and trace device. For the reasons explained below, I conclude it is not. More precisely, I conclude that the information the government seeks *is* information that a pen register or trap and trace device does, by definition, provide, but it is *not* information that the government may lawfully obtain absent a showing of probable cause.

As part of the USA PATRIOT Act, Pub. L. 107-56 § 216(c)(1) (Oct. 26, 2001), Congress amended the definition of "pen register" to read, in pertinent part, as follows: "a device or process which records or decodes dialing, routing, addressing, and signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted ...." 18 U.S.C. § 3127(3). It likewise altered the definition of "trap and trace device" to "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication is transmitted ...."

*Id*. § 3127(4). The information the government seeks – "the location of cell site/sector (physical address) at call origination (for outbound calling), call termination (for incoming calls)" – thus appears to be information that can *only* be obtained in the form of "routing, addressing, and signaling information" as those terms are used in Section 3127.

The government, however, does not rely on the pen register statute, and it appears to want to put some daylight between a pen register and the instrumentality for seeking cell site location information – notwithstanding the fact that the law plainly authorizes a court to allow the installation of a pen register on the basis of a showing that is far less demanding than the probable cause standard. Its reticence in this regard, surprising at first blush, is understandable. The difficulty the government would encounter in acknowledging that it seeks to obtain location information through the use of a pen register or a trap and trace device is that Congress appears to have prohibited it from doing so.

Section 103(a)(2) of the Communications Assistance for Law Enforcement Act, Pub. L. 103-414 (Oct. 25, 1994) ("CALEA"), requires each telecommunications carrier to ensure that the telephone service it provides is capable of being used by authorized law enforcement agents for certain investigative purposes. However, the statute explicitly provides that "with regard to information acquired *solely* pursuant to the authority for pen registers and trap and trace devices (as defined in section 3127 of title 18, United States Code), such call-identifying information *shall not include any information that may disclose the physical location of the subscriber* ...." 47 U.S.C. § 1002(a)(2)(B) (emphasis added). In other words, where a carrier's assistance to law enforcement is ordered on the basis of something less than probable cause, such assistance must not include disclosure of a subscriber's physical location.

4

By its terms, the provision just quoted does no more than govern what a private sector entity must do to assist law enforcement. At the risk of building a straw man, it could thus be argued that CALEA does nothing to prohibit agents from seeking, and courts from granting, authority to obtain cell site location information. There are two flaws with that argument.

First, parsing the statute so finely to achieve such a construction would plainly be at odds with the legislators' intent. In reporting favorably on CALEA, the House Judiciary Committee sought quite emphatically to quell concerns about how the proposed legislation might infringe individual Americans' privacy rights:

> THE LEGISLATION ADDRESSES PRIVACY CONCERNS
>
> Since 1968, the law of this nation has authorized law enforcement agencies to conduct wiretaps pursuant to court order.... The bill will not expand that authority. However, as the potential intrusiveness of technology increases, it is necessary to ensure that government surveillance authority is clearly defined and appropriately limited.
>
> In the [past] eight years ... society's patterns of using electronic communications technology have changed dramatically....
>
> Therefore, [CALEA] includes provisions, which FBI Director Freeh supported in his testimony, that add protections to the exercise of the government's current surveillance authority. Specifically, the bill:
>
> ...
>
> 2. Expressly provides that the authority for pen registers and trap and trace devices *cannot be used to obtain tracking or location information*, other than that which can be determined from the phone number. Currently, in some cellular systems, transactional data that could be obtained by a pen register may include location information.

H.R. Rep. 103-827 at 17, reprinted at 1994 U.S.C.C.A.N. 3489, 3497 (Oct. 4, 1994) (emphasis added). It is thus clear that Congress intended to regulate not only what telecommunications providers could give, but also what law enforcement agents could "obtain."

Second, the provision at issue does not simply prescribe a minimum standard for a carrier's assistance to law enforcement; it also establishes a legal proscription against the carrier providing, by means of a pen register or trap and trace device, the type of information the government now seeks. That fact alone necessarily suffices as a basis to deny the instant application: of the two orders the government would have me sign, one would merely authorize enforcement agents to obtain the information while the other would oblige the relevant telecommunications carrier to provide it. The legislative history of CALEA forbids the former but its text arguably does not. The statute's text does, however, explicitly forbid the latter. 47 U.S.C. § 1002(a)(2)(B). As the government identifies no other method for its agents to obtain the information it seeks than to have the carrier provide, I cannot properly sign either proposed order, to the extent each refers to cell site location information.

My research on this question has failed to reveal any federal case law directly on point. Moreover, it is my understanding based on anecdotal information that magistrate judges in other jurisdictions are being confronted with the same issue but have not yet achieved consensus on how to resolve it. If the government intends to continue seeking authority to obtain cell site location information in aid of its criminal investigations, I urge it to seek appropriate review of this order so that magistrate judges will have more authoritative guidance in determining whether controlling law permits such relief on the basis of the relaxed standard set forth in 18 U.S.C. § 2703, or instead requires adherence to the more exacting standard of probable cause.

Finally, in denying the government its requested relief in this matter, I acknowledge that I have previously granted applications for similar relief, as recently as April 1, 2005, without questioning the legal basis for doing so or suggesting that there might be none. *Cf. Henslee v. Union Planters Nat. Bank & Trust Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting) ("Wisdom too often never comes, and so one ought not to reject it merely because it comes late.").

**SO ORDERED.**

Dated: Central Islip, New York
August 25, 2005

  /s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge